In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-3316

JOHN F. CASTRONOVO, Personally and as Administrator
of the Estate of Sandra S. Castronovo, Deceased,

*Plaintiff-Appellant,*

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:06-cv-00142-JVB—**Joseph Van Bokkelen**, *Judge.*

ARGUED MAY 15, 2009—DECIDED JULY 6, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
FLAUM, *Circuit Judges*.

FLAUM, *Circuit Judge.* Plaintiff John Castronovo, as
assignee of Doug Lavery, Ltd. ("Lavery") and Kenneth
Lively ("Lively"), sued National Union Fire Insurance
Company of Pittsburgh, PA ("National Union") to collect

the unpaid balance of a $6 million consent judgment entered against Lavery and Lively in the underlying litigation. Plaintiff alleges that Lavery and Lively were additional insureds under the National Union policy and entitled to indemnification for that portion of the consent judgment not satisfied by other insurers. On the parties' cross-motions, the district court entered summary judgment for National Union and against plaintiff with respect to all claims, ruling that National Union is not obligated to pay the balance of the consent judgment. Plaintiff appealed, and we now affirm.

## I. Background

### A. The Accident

On February 3, 2003, Sandra Castronovo was stopped for a red light at the intersection of U.S. Highways 421 and 30 in Wanatah, Indiana. A tractor trailer driven by Kenneth Lively struck her car, causing it to spin out of control and strike a semi-trailer. Tragically, Castronovo died the next day.

Lively was employed by Lavery. When the accident occurred, Lively was acting in the scope of his employment, driving a semi-tractor owned by Lavery, and hauling a trailer owned by GE Capital Corp., which GE had leased to Greif Brothers Corp. ("Greif"). Lavery and Greif were operating pursuant to an oral agreement under which each could use the other's trailers.

## B.  The Insurance Policies

Lavery was the named insured under a commercial general liability insurance policy issued by Owners Insurance Company with liability limits of $1 million. As Lavery's employee, Lively was an insured under the Owners policy as well. Travelers Property Casualty Company of America had issued a commercial automobile policy to Greif with liability limits of $2 million.

Greif also was the named insured under a $25 million National Union umbrella policy, which additionally afforded coverage to certain permissive users of any auto owned by, or loaned to, Greif. The Schedule of Underlying Insurance in the National Union policy listed the Travelers' policy. The National Union policy followed form to the Travelers policy for excess coverage and also provided primary insurance for risks covered by the National Union policy but not covered by any underlying insurance. As a condition precedent to coverage, the policy required all insureds to notify National Union of any demands against it and to obtain National Union's consent before voluntarily assuming any obligation.

## C.  The Underlying Litigation

Plaintiff John Castronovo, personally and as administrator of his wife's estate, sued Lively, Lavery and GE Capital for wrongful death in the underlying action (*Castronovo v. Lively*, 2:03-cv-248 (N.D. Ind. filed June 18, 2003)). In March 2004, he added Greif as a defendant.

Owners provided Lavery, Lively, and GE with a defense at the outset of the litigation. Travelers later accepted tender of GE's defense from Owners under the terms of the trailer lease agreement with Greif. Greif tendered its defense to Travelers.

In November 2004, plaintiff sent a global settlement demand of $6.276 million to all defendants. In February 2005, Greif and GE filed a motion for summary judgment, which Castronovo, Lively and Lavery opposed. Travelers considered plaintiff's case a "no pay situation" prior to the district court's ruling on the summary judgment motion.

National Union first learned of the underlying suit in a March 2005 e-mail from Jeffrey Wood, Greif's risk management director, to David Bejbl of AIG Domestic Claims (National Union's claims administrator). Wood stated that the claim had significant value, and he added: "from our perspective there was no negligence on the part of Greif but there is an argument that Greif's auto policy should be excess over the limits of Lavery ($1 million)." He closed by asking how Bejbl would like Greif to handle the claim. In April 2005, Steven Tracy, Travelers' director of claim services, spoke with Michael Mangino of AIG Domestic Claims about the suit. According to Tracy's notes, Mangino stated he did not want a copy of the case file until after the motion for summary judgment was decided. AIG Domestic Claims representatives, on behalf of National Union, continued to inquire of Travelers regarding the progress of the summary judgment motion.

In summer 2005, coverage counsel hired by Owners inquired about coverage for Lavery and Lively under Travelers' policy. Travelers denied coverage for Lavery. Travelers suggested there was no coverage under the Travelers policy for Lively because Lively was not hauling Greif's load when the accident occurred, but it did not give a definitive answer as to Lively. Travelers indicated that its position would depend on how the court ruled on Greif's summary judgment motion.

Owners filed a motion to intervene in the underlying action on July 15, 2005, and it filed a complaint for interpleader on July 29. On August 10, Owners deposited $996,116, the remaining limits of its policy, with the court, and it asked to be absolved of any further duty to defend or indemnify Lavery and Lively.

By July 2005, Lavery and Lively were exploring a consent agreement in exchange for a covenant not to execute against their personal assets. In furtherance of that agreement, plaintiff gave Lavery's and Lively's defense counsel an exemplar agreement and case law for additional language to be included in the documents.

Lavery and Lively did not notify National Union of their coverage discussions with Travelers or their negotiations for a consent judgment. Moreover, Travelers did not advise National Union of its coverage discussions with Lavery and Lively.

In late August 2005, Lavery and Lively finalized and executed their consent judgment agreement in the amount of $6 million. The Marshall County Superior Court, Probate Division, authorized plaintiff to enter into

the agreement, whereby Lavery and Lively would assign their interests against applicable insurance carriers for the amount of the consent judgment in excess of the funds Owners had paid into court. Castronovo executed an unconditional covenant not to enforce the consent judgment against Lavery's and Lively's personal assets. The parties signed the agreement and filed it with the district court on September 1. On September 7, the court approved the consent judgment and entered judgment for plaintiff and against Lavery and Lively for $6 million. National Union's first notice of the consent judgment came on September 12, in a letter from Greif's counsel.

Travelers later determined that Lavery and Lively were insureds under its policy. On October 18, 2005, Travelers paid Castronovo its policy limits of $2 million. On October 24, the funds that Owners had deposited with the court were released to plaintiff.

National Union then refused to pay the excess amount. National Union argued that it was never asked to defend Lavery or Lively and did not know about the proposed consent judgment until after it was approved, and therefore it was not liable for any excess over Travelers' $2 million limits. A balance of $3,003,883 remains unpaid.

## D.  The Instant Coverage Litigation

In April 2006, Castronovo—as Lavery's and Lively's assignee—filed the instant action against National Union to collect the unpaid balance under the settlement agree-

ment. Castronovo claimed that National Union wrongly failed to defend or investigate plaintiff's claim, engaged in unfair claim practices, and breached its contract obligation of good faith.

National Union denied those claims. It filed a counterclaim for a declaration that it had no obligation to Castronovo as the assignee of Lavery and Lively under the umbrella policy because the insureds had breached certain policy conditions.

The district court entered summary judgment for National Union. The court applied Ohio law because Ohio had the most intimate contacts to the facts, and it ruled that Lavery and Lively materially breached a condition precedent to coverage under the National Union policy by failing to obtain National Union's agreement prior to entering into the consent judgment. In finding breach of a condition precedent, the court rejected plaintiff's argument that: (1) National Union had a duty to defend and provide coverage to Lavery and Lively; (2) it breached that duty; and (3) as a consequence, it waived compliance with, and was estopped from, asserting the consent clause as a bar to coverage.

## II. Analysis

On appeal, plaintiff does not dispute that Ohio law applies, nor does he challenge that, if National Union was able to assert the consent clause as a bar to coverage, the district court's conclusion that the assignees materially breached a condition precedent to coverage was

correct. However, plaintiff argues that the district court erred in rejecting the argument that National Union was estopped from asserting the consent clause as a bar to coverage. Accordingly, we must examine whether National Union breached a duty to defend, thereby estopping it from asserting the consent clause. We conduct our review of the district court's ruling on summary judgment de novo, construing facts and drawing inferences in the light most favorable to the plaintiff. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 425 (7th Cir. 2004).

As mentioned, the umbrella policy at issue required National Union to defend a lawsuit alleging a covered risk under two circumstances—when all applicable underlying policy limits have been exhausted by the payment of claims (vertical coverage), or when the National Union policy is the only policy that applies to the risk alleged (horizontal coverage). Specifically, the policy provisions state:

II. Defense

A. We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:

1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

> 2. Damages are sought for Bodily Injury . . .
> covered by this policy but not covered by
> any underlying insurance listed in the Sched-
> ule of Underlying Insurance or any other
> underlying insurance providing coverage to
> the Insured.

Plaintiff focuses his argument on Section II.A.2, the "horizontal" coverage provision.[1] According to plaintiff, Travelers' denial of coverage made the underlying suit one in which damages were being sought for injuries "covered by this policy but not covered by any under-lying insurance" within the meaning of II.A.2., triggering National Union's duty to defend. Yet, as the district court stated, plaintiff's argument is problematic because even assuming that Travelers' denial of coverage could trigger National Union's duty to defend, there were two underlying insurers, and Owners provided coverage to Lavery and Lively.

Plaintiff now argues that Owners paid its policy limits into court and had no further duty to defend and Travelers refused to defend, and that Owners did not provide coverage for damages in excess of its $1,000,000 policy limits. Therefore, plaintiff reasons, no underlying insurance

---

[1] Plaintiff acknowledges that Section II.A.1 does not help him because the duty to defend under that Section does not arise until the limits of the underlying coverage are paid. The limits of the coverage provided by Owners and Travelers were not paid until October 2005, after the district court had approved the consent judgment.

covered the damages above Owners' limits. Plaintiff contends National Union should have provided Lavery and Lively a defense for damages in excess of $1,000,000.

Plaintiff's argument fails because the Section II.A.1 "vertical" coverage provision and the Section II.A.2 "horizontal" coverage provision are mutually exclusive. Under paragraph II.A, the vertical and horizontal defense obligations are presented disjunctively, applying only when "[t]he applicable Limits of Insurance of the underlying policies . . . have been exhausted . . . ; or [d]amages are sought for Bodily Injury . . . covered by this policy but not covered by any underlying insurance." The extent of underlying policy limits is immaterial under the latter horizontal coverage provision; the relevant inquiry is whether "any underlying insurance" applies to the risk or occurrence alleged. If so, then the horizontal coverage provision cannot be implicated. *See Monsler v. Cincinnati Cas. Co.*, 598 N.E.2d 1203, 1209 (Ohio Ct. App. 1991) (umbrella policies do not provide both excess and umbrella coverage for the same alleged occurrence). As plaintiff concedes, Owners was the primary insurer for Lavery and provided coverage to Lavery and Lively in the underlying litigation. Travelers' apparent denial of a defense to Lavery and Lively did not create a defense obligation on the part of National Union.

Even if Travelers' denial of coverage implicated the horizontal defense provision of National Union's policy, National Union did not owe a duty to defend Lavery and Lively because they never requested a defense. Plaintiff argues that National Union breached its con-

tract and denied coverage to its insureds when it failed to act and failed to investigate after it received information about the claim from an authorized agent of Greif. However, under Ohio law, an insurer's duty to defend is triggered by the insured's demand that the insurer provide a defense to a claim of alleged liability. *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 824 N.E.2d 1027, 1030 (Ohio Ct. App. 2005). Here, there was no request for a defense, so there was no duty to act.

National Union did not have a duty to defend and provide coverage to Lavery and Lively. Therefore, it did not breach any duty, and it was not estopped from asserting the consent clause as a bar to coverage. It was able to assert the consent clause, and Lavery and Lively materially breached a condition precedent to coverage under the National Union policy by failing to obtain National Union's agreement prior to entering into the consent judgment. National Union is not obligated to indemnify Lavery and Lively under the consent judgment.

### III. Conclusion

We AFFIRM the decision of the district court.