*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0183p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

FEDERAL-MOGUL U.S. ASBESTOS PERSONAL
INJURY TRUST,

                    *Plaintiff-Appellant,*

        *v.*

CONTINENTAL CASUALTY COMPANY,

                    *Defendant,*

CONTINENTAL INSURANCE COMPANY,

                    *Defendant-Appellee.*

No. 10-1290

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-14060—Arthur J. Tarnow, District Judge.

Argued: June 10, 2011

Decided and Filed: July 8, 2011

Before: COLE, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Andrea Kay Hopkins, GILBERT LLP, Washington, D.C., for Appellant.
Steven M. Crane, BERKES CRANE ROBINSON & SEAL LLP, Los Angeles,
California, for Appellee. **ON BRIEF:** Barry Buchman, GILBERT LLP, Washington,
D.C., Cynthia M. Filipovich, CLARK HILL PLC, Detroit, Michigan, for Appellant.
Steven M. Crane, BERKES CRANE ROBINSON & SEAL LLP, Los Angeles,
California, David J. Bloss, BLOSS BETZ, Grand Rapids, Michigan, for Appellee.

———————————

## OPINION

———————————

COLE, Circuit Judge.   This is an insurance duty-to-defend case. Plaintiff-Appellant Federal-Mogul U.S. Asbestos Personal Injury Trust filed a complaint in the district court seeking declaratory relief.  The Trust holds an umbrella insurance policy issued by Defendant-Appellee Continental Insurance Company and claims that pursuant to that policy, Continental is now required to defend the Trust against certain claims.  Continental, contending it is under no duty to defend, moved to dismiss the complaint for failure to state a claim.  The district court agreed and dismissed the complaint.  Because the declaratory relief sought by the Trust is precluded by the facts alleged, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Federal-Mogul U.S. Asbestos Personal Injury Trust ("Trust") is a trust created by the Chapter 11 bankruptcy plan of the Federal-Mogul Corporation.  From 1965 to 1981, a division of the Federal-Mogul Corporation, the Vellumoid Company, manufactured and sold automotive products containing asbestos.  Subsequently, numerous lawsuits were filed against the Federal-Mogul Corporation for asbestos-related injuries arising from Vellumoid's products ("Vellumoid claims").  Federal-Mogul Corporation's bankruptcy plan established that the Trust bears liability for these claims. In addition, the plan assigned the Trust the right to insurance proceeds and coverage under the insurance policies held by the Federal-Mogul Corporation.

The Trust holds three primary-level general insurance policies that cover it for both liability and defense costs arising out of the Vellumoid claims, one each from Travelers Indemnity Company, Globe Indemnity Company, and Liberty Mutual Insurance Company.  The Trust alleged that the limits of the Travelers Policy have been exhausted, but the other two primary policies are currently defending the Trust against the Vellumoid claims.  The policy held by the Trust at issue here is Continental's

umbrella policy SRU 3196774 ("Policy"). The only primary policy covering the Vellumoid claims that is listed in the umbrella Policy's Underlying Insurance Schedule is the Travelers Policy.

The Trust filed this action seeking declaratory relief in the district court, claiming that the Policy requires Continental to defend the Trust against the Vellumoid claims. Continental moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). At a hearing, the district court orally granted Continental's motion to dismiss. The Trust appeals.

## II.  ANALYSIS

### A.  Standard of Review

We review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo, *see Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005), and may "affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court," *Hensley Mfg. v. ProPride Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). In determining whether a party has failed to state a claim, we construe the complaint in the light most favorable to the non-moving party and accept all factual allegations as true. *See Harbin-Bey*, 420 F.3d at 575. To survive a Rule 12(b)(6) motion to dismiss, a complaint "need contain only 'enough facts to state a claim to relief that is plausible on its face.'" *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  Legal Framework

Because this is a diversity case, we apply substantive state law. *See Anton v. Nat'l Union Fire Ins. Co.*, 634 F.3d 364, 367 (6th Cir. 2011). The parties agree that Michigan law applies. An insurer's duty to defend is "defined by policy language," *Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.*, 537 N.W.2d 879, 880 (Mich. 1995), and "the policy language is most important in our analysis," *Bosco v. Bauermeister*, 571 N.W.2d 509, 513 (Mich. 1997). Interpretation of the policy is a question of law, *see*

*Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006) (citing *Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W.2d 651, 653 (Mich. 2003)), and Michigan courts "look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction," *Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.*, 730 N.W.2d 682, 685 (Mich. 2007) (quoting *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193-94 (Mich. 1999)). These principles include:

> First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.

*Id.* (quoting *Henderson*, 596 N.W.2d at 193-94). We must view the policy as a whole, striving to give meaning to each of its terms and avoid redundancy or surplusage. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 553 (6th Cir. 2003) (interpreting Michigan law). Any ambiguities should be construed against the insurer and in favor of the insured. *Id.*

### C. Interpretation of the Policy

Both parties agree that the Policy is an umbrella policy. An umbrella policy serves two functions: "1) to provide for a higher limit of liability for those losses typically covered by liability insurance-general liability . . . ; [and] 2) to provide for some coverage of those less common losses not typically covered by liability insurance . . . ." *Am. Special Risk Ins. Co. v. A-Best Prods., Inc.*, 975 F. Supp. 1019, 1022 (N.D. Ohio) (quoting *Garmany v. Mission Ins. Co.*, 785 F.2d 941, 948 (11th Cir. 1986)), *aff'd*, 166 F.3d 1213 (6th Cir. 1998). The first scenario is typically referred to as vertical coverage and the latter as horizontal. *Id.*; *see also Yaffe Cos. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1188 (10th Cir. 2007) ("Umbrella policies differ from standard excess policies in that they are designed to fill gaps in coverage both vertically (by providing

excess coverage) and horizontally (by providing primary coverage)." (quoting *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1053 (1st Cir. 1993))).

The Policy's Insuring Agreement states that Continental must "pay on behalf of the insured the ultimate net loss, in excess of the applicable underlying or retained limit, which the insured shall become obligated to pay . . . ." (Policy, Dist. Ct. Docket No. 24, at 12.) "Ultimate net loss" is defined to exclude "all loss expenses and legal expenses (including attorney's fees. . . )," and provides that "[e]xcept as set forth in the Defense, Settlement, Supplementary Payments Insuring Agreement, this policy shall not apply to defense, investigation, or legal expenses covered by underlying insurance." (*Id.*) The Defense, Settlement, Supplementary Payments Insuring Agreement ("DSSP") provides:

> When underlying insurance exists, the company shall have the right but not the obligation to participate at any time in the defense of any suit against the insured.
>
> When an occurrence is not covered by the underlying insurance listed in the underlying insurance schedule or any other underlying insurance collectible by the insured, but covered by the terms of this policy, without regard to the retained limit contained herein, the company in addition to the applicable limits of liability shall: (a) defend any suit against the insured . . . .

(*Id.*) The Travelers Policy is the only primary insurance policy covering the Vellumoid claims that is listed in the Policy's Underlying Insurance Schedule, (*see* Policy, Dist. Ct. Docket No. 24, at 9); the other two primary policies covering the Vellumoid claims, issued by Liberty Mutual and Globe Indemnity, are not listed in the schedule.

The Trust argues that exhaustion of the Travelers Policy triggers Continental's duty to defend under the DSSP and another provision of the Policy, Condition 3. Each of these is discussed in turn.

Under the Policy's DSSP provision, Continental must defend any suit against the Trust "[w]hen an occurrence is not covered by the underlying insurance listed in the underlying insurance schedule or any other underlying insurance collectible by the insured, but covered by the terms of this policy, without regard to the retained limit

contained herein."[1]  (Policy, Dist. Ct. Docket No. 24, at 12.)  Continental contends that because other underlying primary insurance policies are defending the Vellumoid claims, their duty to defend under the DSSP is not yet triggered.  We agree.

In its complaint, the Trust alleged that the Vellumoid claims "fall within the scope of coverage," (First Am. Compl., Dist. Ct. Docket No. 23, at 3), of not only the Travelers Policy, but also the other two primary insurance policies held by the Trust.  The complaint further alleged that "[t]hose primary insurers *are defending the Trust* with respect to Vellumoid asbestos-related bodily injury claims."  (*Id.* at 3-4 (emphasis added).)  These allegations are dispositive of the issue before us, for the plain language of the DSSP provides that Continental must defend only where an occurrence is not covered by the underlying insurance listed in the schedule (the Travelers Policy), "*or any other underlying insurance collectible by the insured.*"  (Policy, Dist. Ct. Docket No. 24, at 12 (emphasis added).)  The Trust's claim that exhaustion of only the Travelers Policy triggers Continental's duty to defend under the DSSP is untenable because it ignores the words "or any other underlying insurance collectible by the insured."

A materially similar provision was construed in the same way by one of our sister circuits.  In *Castronovo v. National Union Fire Insurance Co.*, 571 F.3d 667, 671 (7th Cir. 2009), the insured was covered by two underlying insurers, Travelers and Owners.  The insured also held an umbrella policy, which listed only the Travelers Policy in the schedule of underlying insurance.  *Id.* at 669.  The insured brought an action against the umbrella insurer and made the same argument that the Trust makes here, that the exhaustion of the Travelers Policy triggered the umbrella insurer's duty to defend.  *Id.*

---

[1] The Policy does not define the term "underlying insurance."  However, "[t]he fact that a policy does not define a relevant term does not render the policy ambiguous[;] . . . reviewing courts must interpret the contract in accordance with their commonly used meanings."  *Henderson*, 596 N.W.2d at 194.  "Underlying" is commonly used to mean "lying under or beneath," *see Oxford English Dictionary* (online ver. May 2011).  In its brief, the Trust explains that it purchased multiple layers of insurance: the first consisting of the primary policies (Globe Indemnity, Liberty Mutual, and Travelers Indemnity) and the next or second layer is Continental's Policy.  The Trust does not contend that the term "underlying" as used in the Policy is ambiguous or contest Continental's assertion that all three primary policies are properly considered "underlying insurance."  Therefore, the term "underlying insurance" in the Policy includes all primary insurance policies.

The Seventh Circuit rejected this argument because, just as here, the other underlying insurer was providing defense.**2** *Id.* at 671-72.

Additionally, as noted by Continental, the Trust's interpretation would essentially read another provision, Condition 5, out of the policy. Condition 5 provides that "[i]f underlying insurance is exhausted by any accident or occurrence," Continental must assume settlement or defense duties for "any proceeding against the insured resulting from *the same accident or occurrence*." (Policy, Dist. Ct. Docket No. 24, at 14 (emphasis added).) The Trust admits that the Travelers Policy was exhausted through payment of claims other than the Vellumoid claims, and that therefore Condition 5 does not create a duty to defend here. Condition 5 would be superfluous if the DSSP allowed exhaustion of the Travelers Policy through payment of losses resulting from a *different* occurrence to also trigger Continental's duty to defend the Vellumoid claims. Accordingly, the Trust's interpretation of the DSSP not only strains the provision's plain language, but is contrary to an axiomatic principle of contract interpretation not unique to Michigan law: "[C]ourt[s] must look at the contract as a whole and give meaning to all terms . . . ." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992); *see also Klaap v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("[C]ourt[s] must also give effect to every word, phrase and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.").

The language of the DSSP is not ambiguous. For Continental's duty to defend to arise, the Vellumoid claims must not be covered by either Travelers or any other underlying insurance collectible by the Trust. The Trust alleged that the defense of those claims is currently covered by both Liberty Mutual and Globe Indemnity; therefore, Continental's duty to defend under the DSSP has not yet been triggered. For this reason, we need not reach the disputed issue of whether the term "not covered" only refers to the

---

**2**The umbrella policy provision at issue in *Castronovo* stated, "[w]e shall have the right and duty to defend any claim or suit . . . [when damages sought are] covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured." *Castronovo*, 571 F.3d at 671.

scope of the underlying policy (Continental's position), or the collectability of the underlying policy (the Trust's position). Under either definition of the term, the requirements necessary to trigger Continental's duty to defend under the DSSP are not yet met.

The Trust also contends that because the Travelers Policy has been exhausted, Continental is required to "continue as underlying insurance" pursuant to Condition 3, and that such duty includes defending against the Vellumoid claims. Continental argues that Condition 3 concerns only its duty to indemnify and does not provide a duty to defend. The parties' arguments thus primarily concern whether "continue as underlying insurance" includes defense duties or only speaks to coverage for settlements and judgments. But even assuming arguendo that the Trust is correct, and "continue as underlying insurance" requires Continental to defend as underlying insurance, the Trust's argument suffers from the same infirmity it did with respect to the DSSP provision: Condition 3's unambiguous language requires exhaustion of all underlying policies as a prerequisite to Continental's duty to "continue as underlying insurance."

Condition 3 states, in relevant part, that "[w]here the aggregate limits of liability under said underlying policies of insurance are . . . exhausted by reason of losses paid thereunder, this policy shall . . . continue as underlying insurance." (Policy, Dist. Ct. Docket No. 24, at 14.) Taken out of context, the words "said underlying policies" could be ambiguous. But undefined terms should be interpreted "in accordance with their commonly used meanings." *Henderson*, 596 N.W.2d at 194. The word "said" is commonly understood to mean "named or mentioned before." *Oxford English Dictionary* (online ver. May 2011). Considering Condition 3 as a whole crystallizes what "said underlying policies" refers to. Prior language in Condition 3 states that Continental's liability "shall only be for the ultimate net loss in excess of . . . the underlying limits of liability of the underlying insurance policies as stated and described in the declarations and those of any underlying insurance collectible by the insured." (Policy, Dist. Ct. Docket No. 24, at 14.) Thus, the shorthand reference "said underlying policies" refers to the two categories of previously named policies: (1) "the underlying

insurance policies stated in the declarations," and (2) "any underlying insurance collectible by the insured." (*Id.*) In context then, Condition 3 requires exhaustion of all underlying policies before Continental's obligation to "continue as underlying insurance" is owed.

The Trust's Rule 28(j) submission does not alter this conclusion. The Trust contends that *United States Fidelity & Guaranty Co. v. Continental Insurance Co.*, Nos. CV-04-29-BLG-RFC, CV-08-29-BLG-RFC, 2010 WL 3632457 (D. Mont. Sept. 10, 2010), is on all fours with this case in regard to Condition 3. In *Fidelity*, the court looked to the same language as that here (in a provision also entitled Condition 3 Limits of Liability), and concluded that it "make[s] clear that it imposes a duty to defend once the underlying primary policies are exhausted." *Id.* at *1. However, this statement by the court in *Fidelity* is consistent with the reading of Condition 3 explained above. Under the facts alleged by the Trust, all of the underlying primary policies covering the Vellumoid claims are not exhausted, and thus the predicate to Continental's obligation to continue as underlying insurance has yet to occur.

Lastly, we find the Trust's argument that it is entitled to discovery on the parties' intent unavailing. "Michigan permits the use of extrinsic evidence to dispose of a potential ambiguity, to prove the existence of a potential ambiguity, or to indicate the actual intent of the parties where an actual ambiguity exists." *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital Inc.*, 274 F.3d 1085, 1095 (6th Cir. 2001). But courts cannot "look to extrinsic testimony to determine [parties'] intent when the words used by them are clear and unambiguous and have a definite meaning." *Id.* at 1095-96. The provisions relied upon by the Trust are unambiguous for the reasons explained above. Accordingly, extrinsic evidence is inadmissible and remand unnecessary.

### III. CONCLUSION

Because the Trust has failed to state a claim upon which relief may be granted, we **AFFIRM** the district court's dismissal.