**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0113n.06

No. 11-3415

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 31, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAY A. KINGSLEY; MUNICIPAL CONSTRUCTION EQUIPMENT OPERATORS LABOR COUNCIL, | ) ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| N. EUGENE BRUNDIGE; MICHAEL VERICH; ROBERT SPADA; JAMES SPRAGUE; SHERRIE J. PASSMORE; J. RUSSELL KEITH, | ) ) ) ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: SILER and WHITE, Circuit Judges; REEVES,**[*] **District Judge.**

**HELENE N. WHITE, Circuit Judge.** Kay Kingsley, a former Administrative Law Judge at Ohio's State Employment Relations Board (SERB), and the Municipal Construction Equipment Operators Labor Council (the Union), which represents members in labor-relations matters before the SERB, appeal the district court's dismissal of their amended complaint. The gravamen of Plaintiffs' amended complaint was that Defendants, SERB Board members and officers, terminated Kingsley's employment because, having issued a discovery order in the Union's favor in an unfair-labor case, she refused Defendants' request to retract the order and substitute an order with the opposite outcome. We AFFIRM.

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

SERB is a quasi-judicial state agency that oversees public-sector labor issues in Ohio. Ohio Rev. Code § 4117.02(A). Kingsley was appointed as a full-time SERB administrative law judge (ALJ) in 1999, at which time SERB ALJs were in Ohio's classified civil service. At pertinent times, Kingsley was the only full-time ALJ at SERB.

Kingsley was assigned an unfair labor practice (ULP) claim brought by the Union against the City of Cleveland, which alleged that Cleveland's Mayor met with bargaining-unit members, threatened to fire employees and privatize their jobs, and attempted to intimidate and unfairly circumvent the bargaining process. *SERB v. City of Cleveland*, Case No. 2007-ULP-04-0156. Kingsley issued a discovery order granting the Union's application for a subpoena duces tecum that the Mayor be deposed and produce phone and other records.

The City appealed Kingsley's discovery order to the three-member SERB Board, composed of Defendants N. Eugene Brundige, Chairperson; Michael Verich, Vice-Chairperson; and Robert Spada, Board member. For reasons not apparent in the record, the SERB Board remanded the case to Defendant James Sprague, Chief ALJ, and Kingsley for further review and ordered Defendant Sprague to report the outcome.

In the meantime, SERB ALJs were removed from classified service effective July 17, 2009. *See* O.R.C. § 4117.02(H) as amended by H.B. 1, § 101.01. The same amendment that declassified SERB ALJs also authorized SERB's Chairperson (Defendant Brundige) to appoint and fire ALJs.

On August 26, 2009, Chief ALJ Defendant Sprague approached Kingsley and "suggested" that she change her discovery order by rewriting it with a different outcome. Kingsley declined, but

offered to set up a telephone conference with counsel to attempt to resolve the discovery issue.

Defendant Sprague agreed with the decision to hold a telephone conference.

The following day, after a meeting between Defendants Sprague and Brundige, Brundige and

Sherrie Passmore, SERB's Executive Director, informed Kingsley that she was being laid off.

At a September 3, 2009, SERB Board meeting, the Board granted the City's motion for

reconsideration of Kingsley's discovery order in the ULP case, granted the City's request for a

protective order, and transferred the case from the hearings section to the Board.

By letter dated October 26, 2009, Defendants Brundige and Passmore notified Kingsley that

her lay-off would take effect on October 30, 2009.

**A.**

In November 2009, Kingsley appealed her termination to the State Personnel Board of

Review (SPBR) (administrative appeal), and filed a petition for writ of mandamus in the Ohio Court

of Appeals against SERB to declare H.B. 1 unconstitutional on its face and as applied to her.

Soon after, Plaintiffs filed the instant suit on November 30, 2009, seeking declarations that

H.B. 1 is unconstitutional and that actions of SERB are void, a restraining order prohibiting SERB

from hearing any matter until procedures allowing challenges to Board members' impartiality are

enacted, damages against Defendants in their individual capacities, Kingsley's reinstatement, and

a restraining order prohibiting SERB from deciding the Union's ULP complaint.

**B.**

The SPBR determined that Kingsley was an unclassified employee and dismissed her

administrative appeal for lack of subject-matter jurisdiction. *See Kingsley v. Ohio State Pers. Bd.*

*of Review*, No. 10AP-875, 2011 WL 1782208 (Ohio Ct. App. May 10, 2011). The Ohio Court of

Appeals dismissed Kingsley's petition for writ of mandamus. *Kingsley v. State Emp't Relations Bd.*, No. 09AP-1085, 2011 WL 335033 (Ohio Ct. App. Feb. 1, 2011). Kingsley appealed to the Ohio Supreme Court which, while the instant appeal was pending, affirmed the dismissal of her petition for writ of mandamus. *Kingsley v. State Emp't Relations Bd.*, 958 N.E.2d 169, 172-73 (Ohio 2011), *recon. denied*, 959 N.E.2d 1058 (Ohio 2012).

## II.

This court reviews *de novo* the grant of a Rule 12(b)(6) motion. *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012). "To survive a Rule 12(b)(6) motion to dismiss, a complaint need contain only enough facts to state a claim to relief that is plausible on its face." *Fed.-Mogul U.S. Asbestos Pers. Injury Trust v. Cont'l Cas. Co.*, 666 F.3d 384, 387 (6th Cir. 2011) (internal quotation marks and citation omitted). All well-pleaded facts in the complaint must be accepted as true. *Savoie*, 673 F.3d at 492.

### A. Claims dismissed on jurisdictional grounds

**1.** *Younger*[1] abstention  (counts 4, 5, 6, 7, 10 and 11)

The district court invoked *Younger* abstention to dismiss six counts of Plaintiffs' amended complaint that sought equitable relief: the Union's Due Process claims, the Union and Kingsley's claims that conflicts of interest at SPBR and SERB deprived them of Due Process, Kingsley's claims that H.B. 1 violates the Ohio Constitution and was unlawfully applied to her retroactively, and violation of the Ohio open meeting statute.

---

[1]*Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* abstention is based on concern for comity. If a State's interests in pending civil proceedings are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government, *Younger* abstention is appropriate. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05 (1975)).

For a district court to invoke *Younger* abstention:

> 1) there must be on-going state judicial proceedings; 2) those proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges. *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (quotation marks and citation omitted). If these prerequisites are satisfied and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

*Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332-33 (6th Cir. 2007).

We review *de novo* the district court's decision to invoke *Younger* abstention. *Id.* at 333. The proper time of reference for determining *Younger*-abstention applicability is when the federal complaint is filed. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986). In this case that date is November 30, 2009.

First, both Kingsley and the Union had ongoing state judicial proceedings: Kingsley's appeal to the SPBR and her mandamus action in the Ohio Court of Appeals, and the Union's ULP claim before SERB. Second, the ongoing state proceedings implicated important state interests, i.e., Kingley's claims arose from termination of her employment from a state agency, and included whether the Ohio statute that removed her from classified civil service violated the Ohio Constitution, and whether SERB violated other Ohio statutes when it terminated her employment. The Union's claims involved SERB procedures to adjudicate ULP claims against state or local

employers. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986) (*Younger* doctrine is applicable to state administrative proceedings in which important state interests are vindicated). Finally, Plaintiffs had adequate opportunity to raise constitutional challenges in the state proceedings.[2] As to this third requirement, contrary to Plaintiffs' argument, *Younger* does not require a district court to determine whether state proceedings in which constitutional challenges could have been raised would have "cured" constitutional violations, but rather whether the party had adequate opportunity to raise such violations. *See Am. Family Prepaid Legal Corp.*, 498 F.3d at 332–33.

The three *Younger* requirements having been met, the district court properly dismissed Plaintiffs' claims seeking equitable relief.

**2.** Supplemental Jurisdiction (counts 8, 9, and 2, in part)

"[W]hen faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). Under O.R.C. § 2743.03, Ohio's Court of Claims has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in O.R.C. § 2743.02. *GLA Water Mgmt. v. Univ. of Toledo*, 963 N.E.2d 207, 211–12 (Ohio Ct. App.

---

[2]We do not address two arguments Plaintiffs raise for the first time in their Reply Brief: 1) that even had Kingsley been allowed to present her facial constitutional challenge to the SPBR, the Ohio Court of Appeals would lack jurisdiction to render an opinion on the constitutional challenge, and 2) that the Union's Due-Process claims are not subject to *Younger* abstention because bias (SERB's) is an exception to *Younger*. Nonetheless, we observe that the Supreme Court of Ohio addressed and rejected the first argument during the pendency of this appeal in *Kingsley v. State Emp't Relations Bd.*, 958 N.E.2d 169, 172–73 (Ohio 2011), *recon. denied*, 959 N.E.2d 1058 (Ohio 2012) (table disposition).

2011). Thus, under Ohio law, state employees may not be sued unless and until the Court of Claims

has determined that they are not entitled to immunity. *Haynes*, 887 F.2d at 704.

Because Plaintiffs failed to obtain a determination from the Ohio Court of Claims that

Defendants are not entitled to immunity, the district court properly dismissed counts 8 and 9 of their

amended complaint, which sought damages under Ohio law for intentional infliction of emotional

distress and criminal conduct, and that part of count two arising under Ohio law, i.e., that Defendants

violated Kingsley's liberty and property interests that guarantee her decisional independence under

the Ohio Constitution.

## III. First Amendment Claim

The district court agreed with Defendants that under *Garcetti v. Ceballos*, 547 U.S. 410

(2006), Kingsley's expressive activities were engaged in pursuant to her official ALJ duties and that

her amended complaint thus failed to state a First-Amendment violation.

*Garcetti* held that "when public employees make statements pursuant to their official duties,

the employees are not speaking as citizens for First Amendment purposes, and the Constitution does

not insulate their communications from employer discipline." *Id.* at 421. The Court explained:

> Respondent Richard Ceballos has been employed since 1989 as a deputy district
> attorney for the Los Angeles County District Attorney's Office. During the period
> relevant to this case, Ceballos was a calendar deputy in the office's Pomona branch,
> and in this capacity he exercised certain supervisory responsibilities over other
> lawyers. In February 2000, a defense attorney contacted Ceballos about a pending
> criminal case. The defense attorney said there were inaccuracies in an affidavit used
> to obtain a critical search warrant . . . [and] wanted Ceballos to review the case.
> According to Ceballos, it was not unusual for defense attorneys to ask calendar
> deputies to investigate aspects of pending cases.
>
> After examining the affidavit and visiting the location it described, Ceballos
> determined the affidavit contained serious misrepresentations . . . .

Ceballos spoke on the telephone to the warrant affiant . . . but he did not receive a satisfactory explanation for the perceived inaccuracies. He relayed his findings to his supervisors, petitioners Carol Najera and Frank Sundstedt, and followed up by preparing a disposition memorandum. The memo explained Ceballos' concerns and recommended dismissal of the case. On March 2, 2000, Ceballos submitted the memo to Sundstedt for his review. A few days later, Ceballos presented Sundstedt with another memo, this one describing a second telephone conversation between Ceballos and the warrant affiant.

. . . .

Despite Ceballos' concerns, Sundstedt decided to proceed with the prosecution . . . The trial court held a hearing on the motion. Ceballos was called by the defense and recounted his observations about the affidavit, but the trial court rejected the challenge to the warrant.

Ceballos claims that in the aftermath of these events he was subjected to a series of retaliatory employment actions . . . . [His complaint] alleged petitioners violated the First and Fourteenth Amendments by retaliating against him based on his memo of March 2.

[] Petitioners moved for summary judgment, and the District Court granted their motion. Noting that Ceballos wrote his memo pursuant to his employment duties, the court concluded he was not entitled to First Amendment protection . . . .

The Court of Appeals for the Ninth Circuit reversed, holding that "Ceballos's allegations of wrongdoing in the memorandum constitute protected speech under the First Amendment." 361 F.3d 1168, 1173 (C.A. 9 2004) . . . .

Having concluded that Ceballos' memo satisfied the public-concern requirement, the Court of Appeals proceeded to balance Ceballos' interest in his speech against his supervisors' interest in responding to it. *See Pickering* [*v. Bd. of Educ.*, 391 U.S. 563] at 568. The court struck the balance in Ceballos' favor, noting that petitioners "failed even to suggest disruption or inefficiency in the workings of the District Attorney's Office" as a result of the memo. *See* 361 F.3d, at 1180.

. . . .

We granted certiorari . . . and we now reverse.

. . . .

The *controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. See* Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor' "). That consideration—the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case—distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline. *We hold that when public employees make*

> *statements pursuant to their official duties, the employees are not speaking as
> citizens for First Amendment purposes, and the Constitution does not insulate their
> communications from employer discipline.*

*Garcetti*, 547 U.S. at 414–17, 421 (emphasis added).

### A.

Post-*Garcetti* cases from this circuit are few. Defendants by notice of supplemental

authority, Fed. R. App. P. 28(j), cite *Savage v. Gee*, 665 F.3d 732 (6th Cir. 2012), in which we

applied *Garcetti* and affirmed the grant of summary judgment against the plaintiff, a former state-

university librarian who claimed that he was constructively discharged in retaliation for his First

Amendment speech. Observing that the plaintiff's speech commenting on a book recommendation

was not related to classroom instruction and "only loosely, if at all, related to academic scholarship,"

this court held that his speech was pursuant to his duties as head librarian and as a committee

member selecting books for freshman students, and thus not protected under the First Amendment.

*Id.* at 739. *Savage* relied on cases including *Evans-Marshall v. Board of Education of Tipp City*, 624

F.3d 332, 342–44 (6th Cir. 2010) (holding that "the First Amendment does not protect primary and

secondary school teachers' in-class curricular speech . . . . Even to the extent academic freedom, as

a constitutional rule, could somehow apply to primary and secondary schools, that does not insulate

a teacher's curricular and pedagogical choices from the school board's oversight, as opposed to the

teacher's right to speak and write publicly about academic issues outside of the classroom.").

### B. Decisions of other Circuits applying *Garcetti*

Two post-*Garcetti* circuit court decisions are more on point than our decision in *Savage*.

Complicating matters, however, is that the two arrived at opposite conclusions on the question

whether the plaintiff-government employee who alleged his employment was terminated for refusing

to make false statements had been acting pursuant to official duties and therefore was precluded from bringing a First Amendment retaliation claim. The Supreme Court denied certiorari in both cases.

The Second Circuit in *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1634 (2012), held that a probationary police officer who alleged that he was discharged for refusing to retract a true written report and substitute a false report in an investigation of a civilian complaint charging a fellow police officer with excessive force had engaged in protected speech, i.e., speech as a citizen on a matter of public concern, and that his refusal to make false statements was analogous to a private citizen's lawful refusal to rescind a true accusation, make a false accusation, or file a false police report. As to the distinction between statements affirmatively made by a government employee and a government employee's refusal to either retract such statements or make untrue statements, the Second Circuit observed:

> There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say.

*Jackler*, 658 F.3d at 238 (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988)) (emphasis in original).

In contrast, the District of Columbia Circuit in *Bowie v. Maddox*, 642 F.3d 1122 (D.C. Cir. 2011), *reh'g denied*, 653 F.3d 45 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 1636 (2012), held that a former official of the District of Columbia Inspector General's Office who alleged that he was fired in retaliation for refusing to sign an affidavit that his employer drafted for him in response to a former subordinate's employment-discrimination claim, was acting pursuant to his official duties as a government employee when he refused to sign the affidavit, and that *Garcetti* thus precluded

his First-Amendment retaliation claim. On the plaintiff's petition for rehearing, the *Bowie* court remarked that the Second Circuit in *Jackler* got *Garcetti* "backwards," and opined that "[a] test that allows a First Amendment retaliation claim to proceed whenever the government employee can identify a civilian analogue for his speech is about as useful as a mosquito net made of chicken wire: All official speech, viewed at a sufficient level of abstraction, has a civilian analogue." 653 F.3d at 48. The *Bowie* court observed that "[a]n utterance made pursuant to employment responsibilities is unprotected even if the same utterance would be protected were the employee to communicate it as a citizen," and that, as the dissenting justices in *Garcetti* recognized, *Garcetti* "categorically" denies recovery under the First Amendment to plaintiffs who spoke pursuant to official duties. *Id.* (quotation marks and citation omitted).

In the instant case, Kingsley was acting pursuant to her official duties as ALJ when she refused to retract the discovery order and substitute an order reaching a different result. Further, there is no civilian analogue to her speech. Although we do not endorse Defendants' actions in the instant case, we are bound to apply *Garcetti*, under which Kingsley's First Amendment claim must fail.

## IV. Due Process Claims

Kingsley also challenges the district court's dismissal of her Due Process claims on qualified immunity grounds. Plaintiffs' amended complaint alleged that Kingsley had a liberty interest under the federal Constitution and liberty and property interests under the Ohio Constitution that guarantee her the right of decisional independence as a fair and impartial hearing officer in an administrative proceeding. In response to Defendants' motion to dismiss, Kingsley argued that Defendants violated

her substantive-due-process right to be free from conduct that shocks the conscience and violated her right as a judge to decisional independence.

The district court properly concluded that any such right was not clearly established at the time Kingsley's employment was terminated.

Finally, the district court concluded that to the extent the amended complaint could be read to assert a procedural-due-process claim, it was properly dismissed because Kingsley cited no authority to support that she possessed a property interest in decisional independence arising under Ohio law. As the district court observed, Kingsley's reliance on *Stephens v. Merit Systems Protection Board*, 986 F.2d 493, 497–98 (Fed. Cir. 1993), is misplaced, because that case assumed without deciding that a federal administrative law judge had a cognizable property interest in decisional independence.

## V.

For these reasons, we AFFIRM the district court's dismissal of Plaintiffs' amended complaint.